UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT NAGEL § | | |
| *Plaintiff*, § | | |
| § | | |
| vs. § | CIVIL ACTION NO. | |
| § | | |
| CITY OF NEW BRAUNFELS, TEXAS, § | 5:25-cv-266 | |
| OFFICER PALACIOS (BADGE #238) § | | |
|    In his personal and official capacity § | | |
| OFFICER FRAGA (BADGE #218), § | | |
|    In her personal and official capacity § | | |
| SERGEANT PENNIMAN, § | | |
|    In his personal, supervisory, and § | | |
|    official capacity § | | |
| § | | |
| *Defendants.* § | | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

## COMPLAINT

Plaintiff Robert Nagel (hereinafter "Mr. Nagel), by and through counsel CJ Grisham, brings this Complaint against Defendants City of New Braunfels, Texas (herein referred to as "the City"); Officer Palacios (Badge 238) (herein referred to as "Defendant Palacios"), in his personal and official capacities; Officer Mitchell (Badge #3415) (herein referred to as "Defendant Mitchell"), in his personal and official capacities; Officer Fraga (herein referred to as "Defendant Fraga"), in her

personal and official capacities; and Sergeant Penniman (herin referred to as "Defendant Penniman), in his personal, supervisory, and official capacities, and in support thereof alleges the following upon information and belief:

## INTRODUCTION

1. On March 13, 2023, Defendant Palacios conducted a warrantless search on Mr. Nagel's license plate. Mr. Nagel was not engaged in any criminal conduct.

2. Defendant Palacios arrested Mr. Nagel in retaliation for exercising his 1st and 5th amendment rights to remain silent by arresting him for a fictitious crime and never filing the charges.

3. This case is brought to enforce and protect fundamental constitutional rights of United States citizens, particularly in the City of New Braunfels, Texas.

4. This action is a civil rights action under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' actions and conduct that restricts Plaintiff's rights.

5. Defendants, jointly and separately, acted in a manner that suppresses the free expression of speech by targeting Plaintiff for refusing to answer questions after Defendant Palacios copped an attitude on the side of the road and was

clearly not there to get answers, but to abuse his authority under color of law.

6. Defendant City has a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," of not adequately training or hiring its Officers which "inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978).

7. Plaintiff is an engaged and law-abiding citizen of the City of New Braunfels and Comal County, Texas.

8. Plaintiff has a right to be free from illegal searches and seizures and retaliation for exercising his rights.

## JURISDICTION AND VENUE

9. This action arises under the Constitution and laws of the United States of America.

10. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

11. Plaintiff's claims for damages are authorized by 42 U.S.C. § 1983.

12. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Comal County, Texas.

## PLAINTIFF

13. Plaintiff, Mr. Nagel, is a citizen of the City, which rests within Comal County, Texas.

14. Mr. Nagel has a substantial interest in being free of harassment, retaliation, official oppression, violation of his civil rights, and abuse of authority under color of law.

## DEFENDANTS

15. Defendants, collectively, are government officials and entities.

16. Defendants operate in their official and personal capacities in the City of New Braunfels, and Comal County, Texas.

17. Defendant City is a political subdivision organized under the authority of the Texas Constitution, Article XI, Section 5.

18. Defendant Palacios is a New Braunfels Police Department officer, and is being sued in his personal and official capacities.

19. Defendant Mitchell is a New Braunfels Police Department officer, and is being sued in his personal and official capacities.

20. Defendant Penniman is a New Braunfels Police Department Sergeant, and is being sued in his personal, supervisory, and official capacities.

21. Defendant Fraga is a New Braunfels Police Department officer, and is being sued in her personal and official capacities.

22. Defendants, as government officials and entities, are bound to the United States Constitution.

23. At all times relevant herein, Defendants acted in their personal and official capacities within Smith County, Texas.

24. Defendants, as government officials and entities, are not permitted to engage in actions that violate the United States Constitution.

## STATEMENT OF FACTS

25. On or about March 12, 2023, Mr. Nagel was driving southbound on IH-35 in New Braunfels when he was pulled over by Defendant Palacios at about Mile Marker 185.

26. Without making any announcement, request, or demand, Defendant Palacios attempted to open Mr. Nagel's car door without a warrant, causing Mr. Nagel to fear for his safety.

27. Mr. Nagel rolled down his window and asked Defendant Palacios if Defendant Palacios would like Mr. Nagel to step out of the vehicle, to which Defendant Palacios responded, "yes, Mr. Nagel, if you could take your dogs off your lap and come speak with me outside."

28. Mr. Nagel immediately complied and stepped out of his vehicle.

29. Defendant Palacios stated that the "main reason for the stop is because there is no state return on your license plate."

30. Mr. Nagel is licensed through the State of Texas to drive a motor vehicle upon the roads and highways throughout the United States.

31. Mr. Nagel carries car insurance as required by the State of Texas.

32. Mr. Nagel had an up-to-date vehicle inspection as required by the State of Texas.

33. The vehicle that Mr. Nagel was driving was registered with the State of Texas and Mr. Nagel was issued license plates that were affixed to the front and rear of the vehicle as required by the State of Texas.

34. Defendant Palacios asked Mr. Nagel if he knew the reason that his plates did not register in his system to which Mr. Nagel responded he had no idea.

35. Mr. Nagel explained to Defendant Palacios that he has owned the vehicle since 2005 as the original owner, and that he purchased the vehicle from a dealership.

36. Mr. Nagel attempted to show Defendant Palacios the inspection sticker on his vehicle, but Defendant Palacios ordered him to return to the front of Defendant Palacios' vehicle.

37. Defendant Palacios told Mr. Nagel that "it's a little weird.  So when I run your plate, I get an insurance return, which isn't typical if a license plate is no good or if it's phony.  But, that plate has no return in the state database whatsoever."

38. Defendant Palacios then asked Mr. Nagel when his inspection sticker was due. Mr. Nagel responded that he did not know and that he tried to look at the sticker for him, but that Defendant Palacios made him return.

39. Defendant Palacios, rather than de-escalate the situation, copped an attitude and told Mr. Nagel that, "I did. Because I'm in control of the traffic stop right now, so I don't want you walking away from me." Mr. Nagel responded, "then, I can't answer your question."

40. Defendant Palacios then asked Mr. Nagel in an accusatory and confrontational manner, "Okay, you don't know when your own inspection sticker is due? You've owned it since 2005, but you don't know when it's due?"

41. Based on Defendant Palacios' aggressive, accusatory, and confrontational demeanor, Mr. Nagel informed Defendant Palacios that he was invoking his right to remain silent and would not be answering any more questions.

42. Mr. Nagel had already provided his identification and was cooperative up to this point.

43. Despite being told that he was invoking his right to remain silent, Defendant Palacios continued asking Mr. Nagel probing questions. Mr. Nagel repeatedly reiterated that he wasn't answering questions, but Defendant Palacios persisted.

44. Rather than investigate the reason for the stop, Defendant Palacios continued asking Mr. Nagel whether he had illegal drugs, guns, or other items in his vehicle.

45. Defendant Palacios then asked if there is any reason a canine would alert to the vehicle, indicating he was going to and did prolong the stop to await the arrival of a dog.

46. Approximately seven minutes into the stop, Defendant Fraga arrived on the scene.

47. Defendant Palacios approached Defendant Fraga and likely informed her of the nature of the stop.

48. Defendant Fraga then began asking Mr. Nagel why his tag was coming back with no state return, to which Mr. Nagel responded that, "I will tell you exactly what I told him: I don't know."

49. Defendant Fraga then asked Mr. Nagel if he's ever had a problem registering his vehicle, and Mr. Nagel said he did not. Mr. Nagel also told her that he believed it was current and was going to get the paperwork to show but Defendant Palacios wouldn't allow him.

50. Defendant Fraga said they would run a check to make sure the vehicle was not stolen and "get out of your hair."

51. Mr. Nagel also explained to Defendant Fraga that he has his insurance and registration in the glove compartment, but that Defendant Palacios ordered him out of the car and would not let him retrieve it.

52. While speaking to Defendant Fraga, Defendant Palacios proceeded to search the interior of Mr. Nagel's vehicle with a flashlight from the outside.

53. Defendant Palacios saw that Mr. Nagel had a current and valid inspection and registration sticker on his windshield.

54. Defendant Palacios also observed and recorded the VIN from Mr. Nagel's vehicle.



55. Defendant Fraga, despite being informed that Mr. Nagel did not wish to answer questions, continued to ask Mr. Nagel questions.

56. When Defendant Fraga asked Mr. Nagel whether he lives in town, Mr. Nagel informed Defendant Fraga that Defendant Palacios had all of his information.

57. Defendant Fraga then copped an attitude by told Mr. Nagel that she "just got here." Mr. Nagel responded that "I understand." Defendant Fraga sarcastically retorted that, "I don't think that you do," further escalating the tension on the side of the road rather than work on a solution.

58. Mr. Nagel explained to Defendants Fraga and Palacios that he shares a name with his father, who died three years prior to the incident in question.

59. Mr. Nagel explained that there was a lot of confusion getting the titles and registrations to all his father's vehicles moved over to his mother's, then his names after his father passed away, and that this confusion may be why it's coming back weird in the system.

60. Mr. Nagel explained that he has had no problem registering his vehicle each year at the DMV since everything was moved over to his name.

61. Defendant Fraga began asking inquisitive questions regarding where Mr. Nagel was going and where he was coming from. When Mr. Nagel stated that due to the inquisitive nature of the questions he was going to again invoke his right to remain silent, Defendant Fraga interrupted Mr. Nagal and

threatened to tow his vehicle because she was asking questions due to being "curious."

62. After approximately 30 minutes into the stop, Defendant Penniman arrived on scene while Defendant Palacios continued asking Mr. Nagel if he had illegal substances in his vehicle like narcotics or methamphetamines.

63. Defendant Penniman did not do anything to de-escalate the situation or assist with understanding Mr. Nagel's situation.

64. Mr. Nagel explained to Defendant Penniman that he had the vehicle registered in Bexar County, but Defendant Penniman told Mr. Nagel that he was "operating the vehicle illegally" without asking for any paperwork or allowing Mr. Nagel to get the registration from his vehicle.

65. Despite the fact that there were discrepancies in the system that showed that he was insured, had a valid inspection tag (which requires a registration), and tags on the vehicle, Defendant Penniman said that Defendant Palacios could "arrest you right now if he wanted to."

66. At the time both Defendants Palacios and Penniman made threats to arrest Mr. Nagel, there was no probable cause that a crime had been committed.

67. Defendant Penniman explained that "in all probability, he'll just tow your vehicle tonight" for operating "without a valid registration."

68. Defendant Penniman, as the supervisor on the scene, had the ability and opportunity to fully understand, educate, and train Defendant Palacios on how to properly ascertain registration to ensure that Mr. Nagel wasn't wrongfully arrested, but refused to do any due diligence and simply acquiesced to anything Defendant Palacios wanted to do.

69. Defendant Penniman further displayed a lack of leadership and supervision over Defendant Palacios by telling Mr. Nagel that "it's his traffic stop and I don't dictate to him how he's going to conduct it. I don't tell him whether he's going to arrest somebody or not arrest somebody. It's up to that officer," meaning that Defendant Penniman would do nothing to stop even an unlawful arrest.

70. At one point, Defendant Palacios looked at the registration and stated that it looks like a valid sticker.

71. Defendant Palacios stated that he "ran the VIN and this car comes up as never having been registered."

72. Defendant Palacios carelessly or negligently entered the wrong license plate or VIN into his system to get the false return.

73. Defendant Palacios negligently or incompetently entered the wrong VIN into the system to obtain that result because the vehicle had been registered for almost 20 years.

74. After a lengthy copsplaining about insurance, registration, and title, all Defendants surrounded Mr. Nagel.

75. Defendant Palacios aggressively placed Mr. Nagel against the hood of his patrol car to handcuff and arrest him for displaying a fictitious motor vehicle registration and unlawful carry of a firearm despite discrepancies in the vehicle return.

76. While placing handcuffs on Mr. Nagel, Defendant Palacios leaned over to tell Mr. Nagel that "you shouldn't have started with that 'I want to remain silent' shit."

77. Mr. Nagel spent approximately 12 hours in jail as a result of the false arrest.

78. Defendant City failed to properly hire, train, and supervise its officers on how to identify fictitious motor vehicle registrations.

79. Defendant City failed to properly hire, train, and supervise its officers on procedures in cases where there are anomalies in the license plate check system.

80. Defendant City failed to properly hire, train, and supervise its officers on the differences between reasonable suspicion and probable cause that would justify an arrest.

81. Defendant City failed to properly hire, train, and supervise its police Sergeants and other supervisors to hold subordinates accountable by demanding accuracy and competence when making arrests.

82. Defendant City failed to properly hire, train, and supervise its police Sergeant and other supervisors in respecting the rights of the citizens with whom officers come in contact to avoid false and retaliatory arrests.

**FIRST CLAIM FOR RELIEF**
**(Retaliation, 42 U.S.C. § 1983)**

83. Plaintiff hereby incorporates by reference all stated paragraphs.

84. Plaintiff invoked his constitutionally protected right to remain silent as protected under the 5th Amendment to the United States Constitution.

85. Plaintiff's exercise of this right frustrated Defendants, who then intentionally retaliated against Mr. Nagel for exercising said right.

86. Defendant Palacios retaliated against Mr. Nagel by arresting him on false felony charges.

87. As a direct and proximate cause of Defendants' retaliatory actions, Mr. Nagel suffered irreparable harm, including the loss of his Constitutional rights, entitling him to the recovery of damages.

**SECOND CLAIM FOR RELIEF**
**(Malicious Prosecution, 42 U.S.C. 1983)**

88. Plaintiff hereby incorporates by reference all stated paragraphs.

89. Defendants commenced criminal prosecution against Mr. Nagel by filing fictitious charges of unlawful carrying of a firearm and displaying fictitious motor vehicle registration.

90. Defendants' false arrest forced Mr. Nagel to spend several hours in jail and post two separate bonds to be released from confinement.

91. Defendants failed to do even a cursory inquiry into the registration status of Mr. Nagel's vehicle by not allowing him to retrieve the registration from the glove compartment.

92. On March 11, 2025, the prosecutor informed Mr. Nagel that the charges against him were being dismissed – almost exactly two years after the arrest.

93. Charges were not dismissed until the State believed that the Statute of Limitations had run out to file this lawsuit.

94. The charges against Mr. Nagel were dismissed and cannot be brought again due to the expiration of the Statute of Limitations.

95. Mr. Nagel was actually innocent of the charges against him and the Defendants knew it.

96. There was no probable cause to initiate or continue dragging on the charges against Mr. Nagel because Defendants failed to do even the minimal required investigation prior to engaging in a retaliatory arrest.

97. Defendants acted with malice in arresting Mr. Nagel for having the audacity to invoke his right to remain silent when officers became belligerent, confrontational, and inquisitive of Mr. Nagel's private life.

98. As a direct and proximate cause of Defendants' actions, Mr. Nagel's rights were violated and he suffered damages to his liberty, property rights, and freedom of movement.

## THIRD CLAIM FOR RELIEF
### (False Imprisonment, 42 U.S.C. 1983)

99. Plaintiff hereby incorporates by reference all stated paragraphs.

100. Defendants intentionally detained Mr. Nagel without probable cause or reasonable suspicion.

101. Mr. Nagel did not consent to being detained and had no choice in the matter.

102. Mr. Nagel did not consent to being thrown onto the hood of a patrol unit and handcuffed.

103. Mr. Nagel did not consent to being thrown in a cage for several hours.

104. Because there was no probable cause to make an arrest, Defendants had no legal authority, right, or justification to detain and arrest Mr. Nagel.

105. As a direct and proximate cause of Defendants' actions, Mr. Nagel's rights were violated and he suffered damages to his liberty, property rights, and freedom of movement.

## FOURTH CLAIM FOR RELIEF
### (Violation of Mr. Nagel's 4th Amendment Rights, 42 U.S.C. 1983)

106. Plaintiff hereby incorporates by reference all stated paragraphs.

107. Mr. Nagel has a right to be free of unreasonable searches and seizures.

108. Mr. Nagel has the right to be free from false detention and arrest.

109. As a direct and proximate cause of Defendants' actions, Mr. Nagel's rights were violated and he suffered damages to his liberty, property rights, and freedom of movement.

## FIFTH CLAIM FOR RELIEF
### (Violation of Mr. Nagel's 5th Amendment Rights, 42 U.S.C. 1983)

110. Plaintiff hereby incorporates by reference all stated paragraphs.

111. The right to remain silent is a fundamental constitutional protection that allows individuals to avoid self-incrimination during custodial interrogations.

112. Mr. Nagel clearly and unambiguously asserted his right to remain silent several times to all Defendants.

113. Defendants continued interrogating Mr. Nagel despite his invocation of this right.

114. As a direct and proximate cause of Defendants' actions, Mr. Nagel's rights were violated and he suffered damages to his liberty, property rights, and freedom of movement.

## MONELL LIABILITY

115. Defendants' actions, and the actions of the City, demonstrate a policy, practice, or custom to retaliate against Plaintiff for engaging in his protected activities. Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprived Plaintiff of his right to be free from retaliation for protected conduct.

116. At all relevant times, Plaintiff had a clearly established right to be free from unlawful policies, practices, and customs, as well as a right to be free of unlawful searches and seizures.

117. Defendant City was aware of Defendants' retaliatory conduct and did nothing to prevent it. Defendant City showed a deliberate indifference to the constitutional rights of Plaintiff.

118. Defendant City showed a deliberate indifference and ratified Defendants' conduct.

119. As a direct and proximate result of Defendant City's unlawful actions, Plaintiff was harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A) A Declaration that Defendants' conduct, policies, practices, and custom, written or unwritten, that allow for warrantless searches, retaliatory arrests,

negligent training that allow for retaliation against citizens for exercising their Constitutional rights, violate the United States Constitution;

B) Injunctive relief barring Defendants' conduct and from maintaining their policies, practices, and custom of warrantless searches, retaliatory arrests, and negligent training that allow for retaliation against citizens for exercising their Constitutional rights, which is in violation of 42 U.S.C. § 1983;

C) Nominal Damages for retaliation, unlawful restraint, and malicious prosecution by Defendants for Mr. Nagel's exercise of his constitutionally protected rights, as the Court finds appropriate, from one or more Defendants;

D) Punitive Damages from one or more Defendants in the amount of $500,000;

E) Pre-judgment and post-judgment interest from one or more Defendants;

F) Reasonable attorney's fees and costs of this action; and

G) Any such other relief as appears just and proper.

                                        Respectfully submitted,

                                        LAW OFFICES OF CJ GRISHAM, PLLC

                                        _____

                                        CJ Grisham
                                        Texas State Bar no. 24124533

cj@cjgrisham.com  
3809 S. General Bruce Dr.  
Suite 103-101  
Temple, Texas 76504  
P: 254-405-1726  

*Attorney for Plaintiff*